2021R00808/JF & EL

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. |
| | : | |
| | : | Criminal No. 21- 724 (SDW) |
| v. | : | |
| | : | 18 U.S.C. § 1349 |
| | : | 18 U.S.C. § 1014 |
| JANEL BLACKMAN | : | 18 U.S.C. § 2 |

**INFORMATION**

The defendant having waived in open court prosecution by indictment, the Acting United States Attorney for the District of New Jersey charges:

**COUNT ONE**
**(Conspiracy to Commit Bank Fraud)**

1. At times material to this Information:

**Background**

a. Defendant JANEL BLACKMAN ("BLACKMAN") was a resident of Newark, New Jersey, and employed by the United States Postal Service ("USPS") as a clerk at a post office in Summit, New Jersey (the "Summit PO").

b. Ayanah Sade McCall ("McCall"), a co-conspirator not charged in this Information, was employed as a clerk at the Summit PO.

c. Jahaad Flip ("Flip"), a co-conspirator not charged in this Information, was a resident of Newark, New Jersey, and the son of BLACKMAN.

d. Tashon Ragan ("Ragan"), a co-conspirator not charged in this Information, was a resident of Hillside, New Jersey.

1

e.  Jeffrey Bennett ("Bennett"), a co-conspirator not charged in this Information, was a resident of Irvington, New Jersey.

f.  The victim financial institutions were "financial institutions" whose deposits were insured by the Federal Deposit Insurance Corporation ("FDIC") or whose accounts were insured by the National Credit Union Insurance Fund ("NCUIF").

g.  The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to certain families and individuals suffering the economic effects of the COVID-19 pandemic. The CARES Act authorized the U.S. Department of Treasury to issue economic impact payment ("EIP") checks to certain eligible taxpayers in amounts of up to $1,200 for individuals, $2,400 for married couples filing jointly, and $500 for each qualifying child.

**The Conspiracy**

2.  From in or about February 2019 to in or about May 2020, in Essex and Union Counties, in the District of New Jersey and elsewhere, defendant

**JANEL BLACKMAN**

knowingly and intentionally did conspire and agree with McCall, Flip, Ragan, Bennett, and others (collectively, the "Co-Conspirators"), to execute a scheme and artifice to defraud financial institutions, as defined in Title 18, United States Code, Section 20, whose deposits were insured by the FDIC and whose accounts were insured by the NCUIF, and to obtain money, funds, assets, and

2

other property owned by and under the custody and control of such financial institutions, by means of materially false and fraudulent pretenses, representations, and promises, contrary to Title 18, United States Code, Section 1344.

### Goal of the Conspiracy

3. It was the goal of the conspiracy for BLACKMAN and the Co-Conspirators to enrich themselves by fraudulently obtaining money from victim financial institutions.

### Manner and Means of the Conspiracy

4. It was part of the conspiracy that:

   a. The Co-Conspirators arranged for the United States Postal Service ("USPS") employees, including BLACKMAN and McCall, to steal credit cards and blank checkbooks from the United States mail in exchange for cash payments.

   b. BLACKMAN and McCall removed envelopes and packages containing credit cards and blank checkbooks from financial institutions that were in the mail at the Summit PO, which were intended to be delivered to residents of Summit and New Providence, New Jersey.

   c. USPS employees, including BLACKMAN and McCall, provided stolen checkbooks and credit cards to the Co-Conspirators.

   d. BLACKMAN and McCall received approximately $100 as payment for each stolen checkbook or credit card that they provided to the Co-Conspirators.

e.   The Co-Conspirators solicited accountholders at various financial institutions, including New Jersey high school students (the "Complicit Accountholders"), to provide their banking information to the Co-Conspirators in exchange for the promise of cash.

f.   The Co-Conspirators fraudulently negotiated and endorsed the stolen checks in the names of the Complicit Accountholders and deposited and attempted to deposit the stolen checks into the accounts of the Complicit Accountholders (the "Fraud Accounts").

g.   The Co-Conspirators created counterfeit checks, including counterfeit EIP checks, and deposited and attempted to deposit the counterfeit checks into the Fraud Accounts.

h.   After depositing the stolen checks and counterfeit checks into the Fraud Accounts, the Co-Conspirators withdrew as much money as possible from the Fraud Accounts via automated teller machines ("ATMs") before the victim financial institutions identified the checks as fraudulent and blocked further withdrawals from the Fraud Accounts.

i.   For example, in or about October 2019, while working as a clerk at the Summit PO, BLACKMAN removed an envelope containing a credit card from the mail and gave the stolen credit card to McCall to deliver to another individual.

j.   In or about January 2020, while working as a clerk at the Summit PO, BLACKMAN removed an envelope containing a blank checkbook from the mail. BLACKMAN gave the stolen checkbook to McCall to deliver to

Bennett.  Bennett provided McCall with $100 for the stolen checkbook, which McCall then provided to BLACKMAN.

        k.    In or about March 2020, while working as a clerk at the Summit PO, BLACKMAN removed a blank checkbook from the mail and provided it to Flip and Ragan.

In violation of Title 18, United States Code, Section 1349.

## COUNT TWO
## (False Statements to the U.S. Small Business Administration)

5. The allegations contained in paragraph 1 of this Information are realleged here.

6. At all times relevant to Count Two of this Information:

    a. The U.S. Small Business Administration ("SBA") was an independent agency of the federal government created to aid, counsel, assist and protect the interests of small business concerns, preserve free competitive enterprise, and maintain and strengthen the overall economy of the United States.

    b. The Economic Injury Disaster Loan ("EIDL") program was a SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters. The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

    c. In order to obtain an EIDL, a qualifying small business had to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period ran from January 31, 2019, to January 31, 2020. The applicant had to also certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

        d.    EIDL applications were submitted directly to the SBA. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and costs of goods, as described above. Any funds issued under an EIDL were issued directly by the SBA. EIDL funds could be used for payroll expense, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

        7.    From in or about July 2020 to in or about February 2021, BLACKMAN knowingly filed false and fraudulent EIDL applications with the SBA for fake businesses that did not exist to induce the SBA to provide funding to BLACKMAN under false and fraudulent pretenses.

        8.    For example, on or about October 25, 2020, BLACKMAN filed an EIDL application with the SBA in the name of Hard Times Cafe. In the application, BLACKMAN falsely stated that Hard Times Cafe was a liquor store in Newark, New Jersey, with ten employees. In fact, no such business existed. BLACKMAN further falsely stated that she, as the listed owner of Hard Times Cafe, was not then presently subject to formal criminal charges in any jurisdiction. In fact, on or about September 17, 2020, BLACKMAN was arrested and charged by Criminal Complaint in the District of New Jersey with conspiracy to commit bank fraud, in violation of Title 18, United States Code, Section 1349, in connection with the same scheme described in paragraphs 1 through 4 of this Information. The SBA did not approve the application.

9.      On or about October 25, 2020, in the District of New Jersey and elsewhere, defendant

**JANEL BLACKMAN**

did knowingly make false statements as alleged in paragraph 8 of this Information for the purpose of influencing in any way the action of the U.S. Small Business Administration upon an application for an Economic Injury Disaster Loan.

In violation of Title 18, United States Code, Section 1014, and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION

1. The allegations contained in this Information are realleged here for the purposes of noticing forfeiture, pursuant to Title 18, United States Code, Section 982(a)(2)(A).

2. The United States hereby gives notice to defendant that, upon conviction of the offenses charged in this Information, defendant

**JANEL BLACKMAN**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), all property, real and personal, that constitutes or is derived from proceeds the defendant obtained directly or indirectly as a result of the violations of Title 18, United States Code, Section 1349, and Title 18, United States Code, Section 1014, alleged in this Information.

## SUBSTITUTE ASSETS PROVISION

3. If by any act or omission of BLACKMAN, any of the property subject to forfeiture described herein:

    A. cannot be located upon the exercise of due diligence;

    B. has been transferred or sold to, or deposited with, a third party;

    C. has been placed beyond the jurisdiction of the court;

    D. has been substantially diminished in value; or

    E. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to forfeiture of substitute property up to the value of the property described above, pursuant to Title 18, United States Code, Section 982(b) and Title 21, United States Code, Section 853(p).

*[signature]*
RACHAEL A. HONIG
Acting United States Attorney